UNITED STATES DISTRICT COURT
DISTRICT OF NEW HAMPSHIRE

Michael Frank

    v.                           Civil No. 09-cv-389-PB

City of Manchester, et al.

**O R D E R**

    Michael Frank brings a pro se civil rights action against
the City of Manchester ("City"), Kevin Kinkaid, individually and
in his official capacity as Licensing Coordinator for the City,
and Gary Simmons, individually and in his official capacity as
Assistant Chief of Police for the City.  Defendants move to
compel Frank to answer certain interrogatories and produce
related documents.  Frank objects to the motion.

I.   Background

    Frank's case stems from defendants' denial of his
application for a "peddler's" permit to operate an iced coffee
and ice cream truck in Manchester, New Hampshire, where he
resides.

    As alleged in the amended complaint, Frank was involved in
a series of criminal proceedings in the two years before his
peddler's permit was denied.  On January 25, 2007, Frank was
indicted in Massachusetts for possession of child pornography.
On October 9, 2008, Frank was arrested in Manchester and charged

1

with misdemeanor simple assault.  A domestic violence
restraining order was issued against Frank on the assault
charge.  On January 15, 2009, Frank was found guilty on one
count of simple assault and not guilty on two other related
counts.  Frank successfully appealed the guilty verdict to the
New Hampshire court for a trial de novo.  On April 21, 2009, the
Massachusetts court rendered a verdict of "not guilty" on one
count of child pornography and declared a mistrial on the two
remaining counts.

On May 8, 2009, Frank applied to the City for a peddler's
permit.  Frank desired to operate a mobile vending business in
Manchester selling iced coffee and ice cream.  Under the City's
Code of Ordinances, Chapter 115.40, all peddlers must "secure a
license" from the City prior to operating a business within the
city limits.  The ordinance requires, among other things, that
the application for a peddler's permit contain a complete
"certified criminal record" of the application, and that the
failure to provide all information required is grounds for
denial of the application.  The ordinance further provides that
a permit shall be denied if the applicant received a
"disqualifying criminal conviction" or was imprisoned for such
conviction.

The procedure for applying for a permit required Frank to
submit a completed permit application initially to defendant

Kinkaid, the City's Licensing & Compliance Coordinator for the Business Licensing Division.  Frank alleges that his application fully disclosed his status as a criminal defendant in the New Hampshire and Massachusetts criminal cases.  According to Frank, Kinkaid denied the permit, stating that Frank would have to "clear up" the assault charge before the permit could issue.

After Kinkaid's initial denial of the permit, on May 21, 2009, the State of New Hampshire entered a nolle prosequi on the assault charge against Frank, and the case was dismissed.  Frank thereafter delivered to Kinkaid and to defendant Simmons, the City's Assistant Chief of Police, certified documentation that the assault charges had been dropped.  Simmons then denied the permit, citing the then-pending Massachusetts child pornography charge.  According to Frank, Simmons stated, "You must have done something to be charged with that.  I'm not signing off on your permit."  Frank also received a letter from Kinkaid stating that Frank's application was "denied by the Manchester Police."

Frank appealed the denial to the City's Committee on Administration ("Committee").  Under the ordinance, the Committee "will approve or disapprove the fitness of the applicant for the license."  Appearing at a closed-door hearing before the Committee, Frank complained that Kinkaid and Simmons had denied the permit on the basis of accusations of assault and

3

child pornography, and not based on any criminal conviction.
The Committee affirmed the denial on July 7, 2009.

On September 24, 2009, the Commonwealth of Massachusetts
entered a nolle prosequi on the child pornography charges and
dismissed the remaining indictments.  Frank thereafter filed
suit in this court against Kincaid, Simmons, and the City, for
alleged violations of his rights under the First, Fourth, Fifth,
Sixth, and Fourteenth Amendments of the United States
Constitution, and unspecified laws of the State of New
Hampshire.

Frank alleges that the actions of the defendants in denying
his application for a permit caused him to suffer loss of
reputation in the community, loss of business opportunity,
mental and emotional distress, financial loss, and financial
hardship.  In addition to compensatory and punitive damages in
the amount of $350,000, Frank seeks a declaratory judgment that
the ordinance is unconstitutional both on its face and as
applied by the defendants.

II.  Discovery Standards

The scope of discovery, unless limited by court order,
extends to "any nonprivileged matter that is relevant to any
party's claim or defense --including the existence, description,
nature, custody, condition, and location of any documents."
Fed. R. Civ. P. 26(b)(1).  The party moving to compel discovery

bears the initial burden of showing that the information he seeks is relevant and not privileged.  See Caouette v. OfficeMax, Inc., 352 F. Supp. 2d. 134, 136 (D.N.H. 2005); Saalfrank v. Town of Alton, Civ. No. 08-cv-46-JL, 2009 WL 3578459, at *3 (D.N.H. Oct. 27, 2009).  The movant must also show the effort made to obtain discovery without court action, provide the request and response that is the subject of the motion, disclose other relevant circumstances, and provide grounds to support the motion to compel.  Saalfrank v. Town of Alton, Civ. No. 08-cv-46-JL, 2010 WL 839884, at *13 (D.N.H. March 5, 2010).

The party from whom discovery is sought bears the burden of compliance.  See Carmona v. Toledo, 215 F.3d 124, 135 (1st Cir. 2000).  A party who fails to comply with discovery requirements may be barred from using undisclosed evidence to support or oppose a motion and at trial unless the failure to disclose was substantially justified or harmless.  See Fed. R. Civ. P. 37(c); see also CQ Int'l Co. v. Rochem Int'l, Inc., Civ. Action No. 08cv142-NG, 2010 WL 2292162, at *14 (D. Mass. June 7, 2010).

III. Discussion

Defendants sent Frank fourteen interrogatories, as well as a request for production of documents relating to the interrogatories.  Frank objected to, and refused to answer,

interrogatories 1 through 9 and 12.  Defendants now move to
compel Frank's compliance with the discovery requests.

    A. Aliases

    In interrogatory 1, defendants ask Frank to state any
aliases or other names he "ever used."  Frank objects to the
interrogatory because defendants seek "to attribute an alias to
him."

    Franks' objection does not provide a basis for his failure
to answer the interrogatory.  In addition, there is a basis in
fact for believing that Frank may have used aliases, which
information is relevant to the claims and defenses in this case.
First, an e-mail from Frank shows the name "Michael James" in
the "From" field, instead of the name "Michael Frank."  Second,
Frank's aliases, if any, may reasonably lead to the existence of
additional criminal records which Frank failed to include on his
permit application.

    Accordingly, Frank's aliases, if any, are within the scope
of discovery under Rule 26(b).  However, because the ordinance
requires that the permit application provide information
regarding convictions going back five years, the interrogatory,
which asks for all aliases "ever used," is too broad.  Frank
shall provide the requested information for the period May 8,
2004, to July 7, 2009 (five years prior to Frank's May 8, 2009,

6

initial permit application, and up through the Committee's final
denial on July 2, 2009).

    B. <u>Residences</u>

    In interrogatory 2, defendants ask Frank to state each
address he has resided at for the past ten years, with whom he
resided at each location, the name and address of the landlord
at each location, and whether or not he owned the premises.
Frank objects to the interrogatory on several grounds.  The
court construes Frank's first objection, that "addresses were
not requested during the permitting process," as an objection to
relevance.  Frank also objects that the request is overbroad and
an invasion of his privacy, and that he has already disclosed
potential witnesses in his initial disclosures.  The court
rejects all of these grounds except Frank's argument that the
interrogatory is overbroad.

    Information about Frank's current and prior residences is
relevant in two ways to the claims and defenses in this case.
First, because the information is reasonably calculated to lead
to the discovery of witnesses who know Frank, it is relevant to
Frank's claim that the defendants damaged his reputation when
they denied his permit application.  Second, because the permit
application requires disclosure of all convictions from any
state going back five years, information about Frank's
residences during that time period may reasonably lead to

7

information about convictions in other states not disclosed on the application.

Furthermore, the interrogatory is not an unwarranted invasion of privacy.  Frank placed his reputation and the permit application process at issue in this case, and the information sought is not highly personal or sensitive.  Moreover, the fact that Frank disclosed potential witnesses in his initial disclosures does not foreclose defendants from discovering other potential witnesses.

However, the temporal scope of the interrogatory (ten years) is over-broad.  Information which may help reveal Frank's reputation leading up to the 2009 permit denials is reasonably limited to the five years preceding the initial denial on May 8, 2009.  Information which may help reveal Frank's (allegedly damaged) reputation after the 2009 denials reasonably includes information from 2009 through the present.  Moreover, requiring Frank to provide information about his residences during the five years preceding the 2009 denials is tailored to the ordinance's requirement that Frank provide information about convictions for the five years preceding the application.  Therefore, Frank shall provide the requested information for the period May 8, 2004, to the present.

C. Employment

In interrogatory 3, defendants asked Frank to describe his places of employment, names of supervisors, and job descriptions for all employment he has had over the last fifteen years. Frank objects to the interrogatory on the grounds that it seeks irrelevant information, is overbroad and an invasion of his privacy, and has already been answered (i.e., that he has already disclosed potential witnesses in his initial disclosures).  The court rejects all of these grounds except Frank's argument that the interrogatory is overbroad.

Information about Frank's employment is calculated to lead to information relevant to Frank's claims of financial loss, financial hardship, and reputational injury, and to defendants' defense of failure to mitigate damages.  The information about where Frank worked may also lead to information about convictions in other states not disclosed on the application.

Moreover, for the same reasons stated above with regard to aliases, the court rejects Frank's contentions that the interrogatory is an unwarranted invasion of privacy and that his initial disclosure of witnesses is sufficient.  However, like the request for information on aliases, the temporal scope of the interrogatory requesting employment information for the past fifteen years is overbroad.  Therefore, Frank shall provide the

requested information for the period May 8, 2004, to the
present.

    D. <u>Information Underlying the Massachusetts and New
       Hampshire Criminal Charges</u>

      In interrogatories 4, 5, 6, 7, 8, 9, and 12, defendants ask
for information regarding the facts underlying the Massachusetts
child pornography charges, such as: what Frank was doing with
the alleged victim, "Sasha," at the Best Western Hotel in
Bedford, Massachusetts; whether the computer and digital camera
seized by the police from Frank's hotel room belonged to him;
whether he took the photographs contained in the computer and
digital camera; and the content of Frank's contacts with "Sasha"
(in person, by phone, text, or e-mail) between February 2006 and
June 2009.  In interrogatory 11, defendants asked whether Frank
has copies of correspondence, reports, pleadings or other
documents "having to do" with the child pornography charges in
Massachusetts.  Except for interrogatory 11, which Frank states
that he has completely answered,[1] Frank objects to all of these
interrogatories and related requests to produce documents,

---

[1] Frank attached to his responsive brief correspondence and court
documents he produced to defendants in response to interrogatory
11.  If Frank has produced all that interrogatory 11 requested,
then he has fulfilled his discovery obligation.  Moreover, to
the extent that the documents sought are public documents,
defendants have direct access to them.  <u>See</u> <u>Saalfrank,</u> 2009 WL
3578459, at *9-10.

principally on the ground that the information is irrelevant to the claims and defenses in this case.  The court agrees.

As noted, Frank challenges the ordinance on its face and as applied to him.  With respect to the facial challenge, defendants have not explained how the facts underlying the criminal charges against Frank would be relevant to this claim or a defense to this claim.

Similarly, defendants have not explained how such information is relevant to the "as-applied" challenge.  It does not appear from the pleadings or the parties' submissions that the defendants, at the time they applied the ordinance to Frank, had before them for consideration the facts underlying the then-pending state criminal charges.

In addition, defendants have not carried their burden of showing how Frank's reputation may be tied to whether or not he actually committed the crimes.  Frank's reputation depends on how other people perceived him.  Defendants have not connected such perceptions to the wide-ranging requests for information underlying the criminal charges.

All of this is not to say that the facts underlying the criminal charges are irrelevant to a claim or defense in this case, but rather, that defendants have failed to show their relevance.  See, e.g., Wamala v. City of Nashua, Civ. No. 09-cv-304-JD, 2010 WL 3746008, at *6, 8 (D.N.H. Sept. 20, 2010).  It

is defendants' burden to demonstrate that the requested discovery is relevant to a claim or defense.  Caouette, 352 F. Supp. 2d at 136.  Because defendants have failed to meet this burden, their motion is denied as to all interrogatories and requests to produce documents that relate to the facts underlying the Massachusetts and New Hampshire criminal charges.

IV.  Conclusion

For the foregoing reasons, the defendants' motion to compel (document no. 9) is granted in part and denied in part.  Frank shall provide the following information to the defendants within seven (7) days of this order:

1. Full name and address, and any aliases or other names Frank used during the period May 8, 2004, to July 7, 2009.

2. Each address where Frank resided during the period May 8, 2004, through the present, stating for each with whom he resided at each location, whether or not he owned the premises, and if not, the name and address of his landlord at each location.

3. Describe in detail each employment Frank had during the period May 8, 2004, through the present, stating for each the name and address of the employer, Frank's title and job description at each employer, the name of his supervisor and the dates between which he was employed at each job.

4. All documents identified in Frank's answers to the
questions set forth in 1 through 3, above.

    SO ORDERED

                                    _____
                                    Landya B. McCafferty
                                    United States Magistrate Judge

Dated:  November 15, 2010

cc:  Robert J. Meagher, Esq.
     Michael Frank, pro se