```
                  UNITED STATES DISTRICT COURT
                 FOR THE DISTRICT OF NEW HAMPSHIRE
```

Michael Frank

   v.                                              Case No. 09-cv-389-PB
                                                    Opinion No. 2011 DNH 122

City of Manchester, et al.

## MEMORANDUM AND ORDER

Michael Frank filed this action against the City of Manchester and two City officials after he was denied a peddler's license. His principal federal claim is that the defendants violated his Fourteenth Amendment right to procedural due process by failing to give him a constitutionally adequate post-deprivation hearing. As I explain in greater detail below, Frank's claim fails because he does not have a protectable property interest in a peddler's license.

## I.  BACKGROUND

**A.   Requirements for a License Application**

This case arises from the defendants' allegedly unlawful

denial of Frank's application for a peddler's license.  New
Hampshire law authorizes cities to adopt ordinances that
establish the terms under which a peddler's license may be
issued.  N.H. Rev. Stat. Ann. § 31:102-a (2002).  Among other
things, this statute authorizes such ordinances to include such
"other reasonable conditions and terms deemed necessary for
public convenience and safety as the governing board
determines."  Id.

In following this law, the City of Manchester has passed
ordinances requiring all peddlers to secure a license from the
City prior to operating a business within the City's limits.
Manchester, N.H. Code of Ordinances ch. 115.40 (2005).  The
ordinance requires that an application for a peddler's license
in Manchester must include "[a] complete certified criminal
record," and states that the failure to provide all information
required is grounds for denial of the application.  Id.  The
ordinance further provides that a license "shall be denied" if
the applicant has received a "disqualifying criminal conviction
. . . during the five years preceding the application."[1]  Id.

---

[1] Disqualifying convictions are "[a]ny felony convictions, any
conviction involving harassment, violence, theft, fraud,
loitering, prowling, or endangering the welfare of a child or

"An applicant who is denied a peddler license . . . may file a written request for a review of the application before the Committee on Administration" ("Committee").  Id.  The Committee "will approve or disapprove the fitness of the applicant for the license."  Id.  Finally, the ordinance also requires that "application for a peddler's license shall be made to the City Clerk upon a form to be determined by the City Clerk."  Id.

    The Manchester Business License Application, issued by the Office of the City Clerk pursuant to the above ordinance, requires an applicant to obtain approvals from six City departments before the application may be approved.  Manchester Business License Application ("Application"), available at http://www.manchesternh.gov/website/Home/Business.aspx, at 6.  Each such department must affirm that the applicant has met "all permitting requirements and/or other requirements of th[e] department."  Id.  The Business License Application also states that "[p]ursuant to ch. 110.02(C) of the Code of Ordinances, departments may place additional restrictions or conditions on certain activities."  Id.  This language closely tracks that of the cited ordinance, which states that, "[a]s a condition of licensure," additional conditions may be added to a business's

3

application whenever they are:

> warranted by any circumstances pertaining to a specific establishment or to prevent any nuisance related to or caused by the licensed activity.  A nuisance, in addition to its common law meaning, is anything that endangers life, health or safety, gives offense to senses, violates common standards of decency or obstructs reasonable and comfortable use of any property.

Manchester, N.H. Code of Ordinances ch. 110.02 (1999).

B.   **Facts Relating to Frank's Application**

Frank first sought a peddler's license on May 8, 2009.  His application seemed doomed from the start, however, because the certified criminal record he produced with his application included a disqualifying conviction for simple assault.[2]  Frank attempted to address this difficulty on May 21, when he succeeded in having the assault case dismissed.  City officials, however, would not accept the court records showing that the conviction had been dismissed because it remained on his certified criminal record.

---

[2]  Frank was convicted on the assault charge in district court. He appealed the conviction to Superior Court and, although his certified criminal record did not show it, the conviction was on appeal when Frank made his original application.  The charge was dismissed by the prosecutor on May 21, 2009.

Frank's problems were compounded when Gary Simmons, the assistant police chief and one of the defendants in this case, learned that Frank had two charges of possession of child pornography pending against him in Massachusetts.[3]  Because of these pending charges, Simmons refused to sign Frank's application on behalf of the police department.

Even though Frank was unable to obtain the police department's approval, he returned to the City Clerk's office on June 5, 2009 and demanded his peddler's license.  Kevin Kincaid, the City's licensing and compliance coordinator, and another defendant in this case, denied Frank's application and informed him that he could challenge the denial by appealing to the City's Committee on Administration.

The Committee heard Frank's appeal and voted to deny Frank a peddler's license on July 7, 2009.

---

[3]  Frank was originally charged with three counts of possession of child pornography.  He was tried on all three charges shortly before he made his application.  He was acquitted on one of the charges and a mistrial was declared on the other two.  These are the two charges that were pending against him when his application was under review.  They were ultimately dismissed on September 24, 2009.

## II. **STANDARD OF REVIEW**

A summary judgment motion should be granted when the record reveals "that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The evidence submitted in support of the motion must be considered in the light most favorable to the nonmoving party, drawing all reasonable inferences in its favor. See Navarro v. Pfizer Corp., 261 F.3d 90, 94 (1st Cir. 2001).

A party seeking summary judgment must first identify the absence of any genuine issue of material fact. Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). The burden then shifts to the nonmoving party to "produce evidence on which a reasonable finder of fact, under the appropriate proof burden, could base a verdict for it; if that party cannot produce such evidence, the motion must be granted." Ayala-Gerena v. Bristol Myers-Squibb Co., 95 F.3d 86, 94 (1st Cir. 1996). On cross motions for summary judgment, the standard of review is applied to each motion separately. See Am. Home Assur. Co. v. AGM Marine Contractors, Inc., 467 F.3d 810, 812 (1st Cir. 2006).

In reviewing a pro se motion, this Court is obliged to construe the pleading liberally. See Ayala Serrano v. Lebron

6

Gonzales, 909 F.2d 8, 15 (1st Cir. 1990). This review ensures that pro se pleadings are given fair and meaningful consideration. See Eveland v. Dir. of C.I.A., 843 F.2d 46, 49 (1st Cir. 1988).

### III.  ANALYSIS

Frank invokes the First, Fourth, Fifth, and Fourteenth Amendments in support of his complaint but the only possible federal claim that the facts of this case support is a claim that the defendants violated his right to procedural due process.

To establish a procedural due process claim, a plaintiff in Frank's position must show that the defendants deprived him of a protected property interest. Perez-Acevedo v. Rivero-Cubano, 520 F.3d 26, 30 (1st Cir. 2008). Property interests are created and defined by state law. See Leis v. Flynt, 439 U.S. 438, 441 (1979). Supreme Court precedent, however, recognizes that more than a mere expectation of a benefit is required to give rise to a protected property interest. Board of Pardons v. Allen, 482 U.S. 369, 382 (1987). As the court explained in its seminal decision on the subject: "a person clearly must have more than

7

an abstract need or desire for [the benefit].  He must have more than a unilateral expectation of it.  He must, instead, have a legitimate claim of entitlement to it." Board of Regents v. Roth, 408 U.S. 564, 577 (1972).  It thus will be a rare case in which an application for a license that the government has discretion to grant or deny will give rise to a property right protected by the due process clause.  See, e.g. Beitzell v. Jeffrey, 643 F.2d 870, 874 (1st Cir. 1981); Medina v. Rudman, 545 F.2d 244, 250-51 (1st Cir. 1976).

   The First Circuit confronted a case similar to the one that Frank presents here in Chongris v. Board of Appeals, 811 F.2d 36 (1st Cir. 1987).  In that case, an applicant for a common victualler's license sought permission to open a donut shop.  Id. at 43.  The court rejected the claim, finding that where state law stated that "licensing authorities *may* grant licenses to persons to be . . . common victuallers," the issuance of a victualler's license was "altogether permissive."  See Chongris, 811 F.2d at 43.  The statute went on to state that licensing authorities were not required to grant a license if "in their opinion, the public good does not require it."  Id.  Because this language indicated that town officials had discretion on

whether to grant a license, the plaintiffs "possessed no property interest in the . . . license such as would entitle them to the prophylaxis of procedural due process or to relief under 42 U.S.C. § 1983."  See id. at 44.

The present case is indistinguishable from Chongris.  New Hampshire law provides that "the governing board of a city, town or village district *may* adopt, by ordinance or regulation, provisions for the licensure and regulation of itinerant vendors, hawkers, [and] peddlers."  N.H. Rev. Stat. Ann. § 31:102-a (2002) (emphasis added).  The law allows municipalities to include "[o]ther reasonable conditions and terms deemed necessary for public convenience and safety."  Id.  This language closely tracks the permissive language that was relied on in Chongris.  The City of Manchester has in turn required all peddlers to secure a license from the City, using an application to the City Clerk's office, upon a form to be determined by the City Clerk.  Manchester, N.H. Code of Ordinances ch. 115.40 (2005).  The Business License Application, issued by the City Clerk pursuant to that ordinance, reiterates the discretion given to its officials by requiring that all license applications be "submitted with all applicable department

9

signoffs." Application at 7. The six department approvals, which include the police department, must affirm that the applicant has met "all permitting requirements and/or other requirements of th[e] department." Id. at 6.[4] The license application also explicitly indicates that "additional documentation may be required" of an applicant. Id. at 7.

Additional discretion is granted by Manchester Ordinance ch. 110.02, which governs business licenses. The ordinance states that "[a]s a condition of licensure," "additional restrictions or conditions" may be added by City departments whenever they are "warranted by any circumstances pertaining to a specific establishment or to prevent . . . anything that endangers life, health or safety." Manchester, N.H. Code of Ordinances ch. 110.02 (1999).

Frank's procedural due process claim is based on the incorrect premise that the only requirement for issuance of a

---

[4] The complete City of Manchester "Business License Application" was not entered into the record by either party. It is appropriate, however, to consider such evidence. See Watterson v. Page, 987 F.2d 1, 3-4 (1st Cir. 1993) (noting that even at the motion to dismiss stage courts may consider evidence from outside the record consisting of "documents the authenticity of which are not disputed by the parties . . . official public records . . . documents central to plaintiffs' claim; or . . . documents sufficiently referred to in the complaint").

10

peddler's license is that there is no disqualifying conviction on one's record at the time of application.  As in Chongris, however, the relevant state and local laws in Manchester give broad discretion to municipal officials in denying applications for licenses.  To suggest, as Frank argues, that the departments responsible for approvals may create additional requirements for licensure, yet possess no discretion to act on the basis of those requirements, is nonsensical.  Therefore, the correct reading of the City ordinance is that while an applicant with a disqualifying conviction must be denied a license, town officials also possess discretion to deny an application based on a variety of other factors, particularly when a factor could endanger "life, health or safety."  Id.

When the City ordinance regarding the issuance of peddler's licenses is properly read, it is quite clear that an applicant for a license has no entitlement to a license.  Accordingly, Frank cannot maintain a viable due process claim because he lacks a protected property interest in the license he was denied.[5]

---

[5] Frank also asserts various state law claims.  I decline to assert supplemental jurisdiction over those claims and dismiss them without prejudice.

## IV. CONCLUSION

Defendants' motion for summary judgment (Doc. No. 13) is granted with respect to Frank's federal claims. Frank's state law claims are dismissed without prejudice. The clerk shall enter judgment and close the case.

SO ORDERED.

/s/Paul Barbadoro
Paul Barbadoro
United States District Judge

August 10, 2011

cc: Michael Frank, pro se
 Robert Meagher, Esq.